863 So.2d 434 (2003)
Roshawn T. STEPHENS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-118.
District Court of Appeal of Florida, Fourth District.
December 31, 2003.
*435 Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Roshawn Stephens was charged by information on four counts. He moved to sever counts two and three from counts one and four. Because the trial court improperly denied Stephens's motion, we reverse and remand.
Stephens was charged in count two with grand theft auto, and in count three with burglary of a structure or conveyance. The charges in counts two and three resulted from the theft of a Dodge Durango on or about October 19, 2001 from the home of Brian Jennings in Boynton Beach. In another incident, unrelated to counts two and three, Stephens was charged in count one with burglary with assault or *436 battery and in count four with petit theft. Counts one and four resulted from the theft of the purse of Susan Watson, a seventy-seven-year-old woman, and the ensuing assault on her person.
The theft and assault occurred at a gas station, around noon on October 19, 2001 in North Palm Beach. Watson was pumping gas and had left the driver's side door of her car open. She had also left her purse in the car. As Watson pumped her gas, she looked up and saw a young man standing in front of her open car door. She recognized this young man as the driver of an SUV who had pulled up on the opposite side of the pump. At trial, Watson testified that she now knows that the SUV was a Dodge Durango. The man reached into the car and grabbed Watson's purse. As he did this, Watson grabbed the young man and held onto his shirt. As Watson would not let go, the young man dragged her to the driver side door of the Durango. The man was trying to get into the driver's seat and eventually shoved Watson to the ground. Watson hit the concrete face-first. She lost consciousness briefly and did not know where the man or the Durango went after that.
At trial, Stephens moved to sever the Durango case from the Watson case. The trial court ruled that the two cases would be tried separately, but the State would be permitted to introduce evidence of the Durango theft in the Watson case. Stephens responded that he did not "want this kind of severance" as it would not be meaningful. We agree with Stephens, rejecting the State's argument that because the severance was not denied this issue has not been preserved for review.
The purpose of separate trials is "`to assure that evidence adduced on one charge will not be misused to dispel doubts on the other.'" State v. Williams, 453 So.2d 824, 825 (Fla.1984) (quoting Paul v. State, 365 So.2d 1063, 1066 (Fla. 1st DCA 1979) (Smith, J., dissenting), adopted in, Paul v. State, 385 So.2d 1371, 1372 (Fla. 1980)).
In this case, severing the two cases but admitting the evidence defeats the purpose of severing cases, which is to exclude evidence of the other crimes. As the concern in joining offenses is the effect of the evidence of the other charge and not just the charge, the trial court's ruling, allowing evidence of the other two counts to be used, effectively denied Stephens's motion to sever. Thus, this issue was preserved.
The standard of review for the denial of a motion for severance is abuse of discretion. Bateson v. State, 761 So.2d 1165, 1169 (Fla. 4th DCA 2000) (citations omitted). In order for joinder of Stephens's offenses to have been proper, his offenses must be connected in a "significant way." Ellis v. State, 622 So.2d 991, 1000 (Fla.1993). "This can include the fact that they occurred during a `spree' ... or the fact that one crime is causally related to the other." Id. (citations omitted).
"For `crime spree' offenses to be tried together, they generally require both temporal and geographical proximity, as well as a similarity between the offenses." Hutchinson v. State, 731 So.2d 812, 815 (Fla. 5th DCA 1999). Here, it is arguable that the two crimes were connected temporally and geographically. However, "temporal and geographic proximity is not sufficient in itself to justify joinder." Ellis, 622 So.2d at 1000. In this case, the third requirement for a crime spree is not satisfied as there is not a similarity between the two offenses.
In the Durango case, counts two and three, Stephens is charged with stealing an SUV. In the Watson case, counts one and four, he is charged with assaulting a woman *437 and stealing her purse. While both instances involve theft, there is not enough similarity in the nature and manner to link the two crimes together as a crime spree. Other cases where courts have identified crime sprees in the context of considering motions for severance have dealt with crimes that had a much higher degree of similarity than the crimes in this case. See Rolling v. State, 695 So.2d 278, 295-96 (Fla.1997) (where the court stated the defendant went on a crime spree when he stabbed to death five college students in their apartments within a seventy-two hour period); Bundy v. State, 455 So.2d 330, 334, 335 (Fla.1984), abrogated on other grounds, Fenelon v. State, 594 So.2d 292, 294 (Fla.1992) (where the court found that when the defendant attacked four women in a sorority house with a blunt weapon, killing two of them, and attacked a fifth woman with a blunt weapon about an hour later a few blocks away, the crimes were linked by "the close proximity in time and location, by their nature, and by the manner in which they were perpetrated"); Rohan v. State, 696 So.2d 901, 902-03 (Fla. 4th DCA 1997), abrogated on other grounds by, State v. Smith, 840 So.2d 987, 990-91 (Fla.2003) (where the court found the defendant went on a crime spree when he burglarized an apartment and then a dorm room in less than an hour) Here, there is not a meaningful relationship between the theft of the car and the assault and robbery. Thus, Stephens's actions did not constitute a crime spree and cannot provide a basis for joinder.
The second situation justifying joinder, situations where there is a causal link between two offenses, also does not apply to the facts in this case. Cases where there is a causal link between two offenses are those in which "[o]ne crime was used to induce the other." Ellis, 622 So.2d at 1000. For example, in Fotopoulos v. State, 608 So.2d 784, 789-90 (Fla.1992), the defendant coerced a woman to kill a man while he videotaped her crime and then later used this videotape as blackmail to coerce the woman to murder his wife. Similarly, in Livingston v. State, 565 So.2d 1288, 1290 (Fla.1988), the court found it was proper to join the offenses as the pistol stolen from an earlier burglary was used to commit another robbery and murder. Unlike the cases described above, the stolen car did not cause the assault and robbery of Watson.
In Crossley v. State, 596 So.2d 447, 448 (Fla.1992), the defendant committed his first offenses when he briefly kidnapped Betty White, robbed her, and then released her, stealing her car. Crossley's second offense occurred a few hours later when he committed an armed robbery of the Banner Food Store, which was located about two miles from where he released his kidnapping victim. Id. The court found that "though Crossley was arrested after the ... robbery [of the store] while driving White's car there is no evidence that Crossley used White's car to perpetrate the [store] robbery." Id. at 450. Here, while the Durango was used to get to the gas station and later to leave it, there is no evidence that it aided Stephens in perpetrating the crimes committed against Watson.
We find the State's argument that any error in this case was harmless to be unpersuasive. Thus, we find the trial court reversibly erred when it denied Stephens's motion for severance. Therefore, we reverse and remand for proceedings consistent with this opinion.
REVERSED and REMANDED.
FARMER, C.J., GUNTHER, J., KRATHEN, DAVID H., Associate Judge, concur.